IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHERYL L. REAVES,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

Case No. 6:14-cv-01154-AA
OPINION AND ORDER

---

Richard F. McGinty
McGinty & Belcher, PC
P.O. Box 12806
Salem, Oregon 97309
    Attorney for plaintiff

Billy J. Williams
Janice E. Hébert
U.S. Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Franco L. Becia
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Cheryl L. Reaves brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Title XVI Supplemental Security Income ("SSI") disability benefits under the Act. For the reasons explained below, the decision is reversed and this case is remanded for further proceedings.

## BACKGROUND

On April 20, 2011, plaintiff applied for SSI benefits, alleging disability beginning January 8, 2006.[1] Tr. 630. Plaintiff's claim was denied initially and on reconsideration, after which plaintiff filed a written request for a hearing. Tr. 539. Plaintiff appeared and testified at the hearing on June 28, 2012. Tr. 539. The ALJ found plaintiff not disabled and capable of performing both past work and other work existing in the national economy. Tr. 539, 548-50. The Appeals Council denied plaintiff's request for review, rendering the ALJ's findings the final agency decision. Tr. 528. Plaintiff filed this appeal on October 5, 2015.

Born on December 14, 1961, plaintiff was forty-four years on the alleged disability onset date and fifty years old at the time of the hearing. Tr. 630, 1063. Plaintiff completed the tenth grade. Tr. 1066. Her previous jobs include service station attendant, fast food worker, cabinet maker, and care

---

[1] The administrative law judge ("ALJ") incorrectly stated in his decision that the application date was April 4, 2011, and the alleged disability onset date was August 11, 2002. Tr. 539. The application summary sent to plaintiff by the Social Security Administration states she applied for SSI benefits on April 20, 2011 and her disability allegedly began on January 8, 2006. Tr. 630. While the ALJ erred in his statement of the application and disability onset dates, this error was harmless because the ALJ still considered the entire alleged disability period. *See Stout v. Comm'r, Soc Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion").

provider. Tr. 1098. Plaintiff alleges she suffers from regular mood swings, poor memory, distraction, overwhelm, loud ringing in her ears, difficulty sitting still for more than twenty minutes, and occasional meltdowns. Tr. 1080, 1086-91.

**STANDARD**

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations marks omitted). A court must weigh "both the evidence that supports and detracts from the [ALJ's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

"The [Commissioner] has established a five-step sequential evaluation process for determining whether a person is disabled." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the ALJ determines whether a plaintiff is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the plaintiff is not disabled.

At step two, the ALJ evaluates whether the plaintiff has a "medically severe impairment or

combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, she is not disabled.

At step three, the ALJ determines whether the plaintiff's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [ALJ] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 416.920(d) (list of impairments in Appendix 1). If so, the plaintiff is presumptively disabled; if not, the ALJ proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the ALJ resolves whether the plaintiff can still perform "past relevant work." 20 C.F.R. § 416.920(f). If the plaintiff can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141-42. At step five, the ALJ must establish the plaintiff can perform other work existing in significant numbers in the local and national economy. *Id.*; 20 C.F.R. § 416.920(g). If the Commissioner meets this burden, the plaintiff is not disabled. 20 C.F.R. § 416.966(b).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

At step one, the ALJ found the plaintiff had not engaged in substantial gainful activity since the application date and had no earnings since 2002. Tr. 541. At step two, the ALJ found plaintiff had several severe impairments: post-concussion syndrome; status post frontal craniotomy (post-brain surgery symptoms); history of meningitis; tinnitus (ringing in the ears); adjustment disorder with mixed anxiety and depressive mood; polysubstance abuse; and personality disorder. Tr. 541. At step three, the ALJ found plaintiff's combination of symptoms did not meet or medically equal the severity of impairments listed in Appendix 1. Tr. 542. At step four, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels,

subject to the following nonexertional limitations: "no climbing of ladders, ropes, and scaffolds; avoid even moderate exposure to noise and hazards (such as heights and dangerous equipment); perform only simple, repetitive work; and limited to occasional public and co-worker interaction." Tr. 543. The ALJ also found plaintiff was not disabled because she had the RFC to perform past work as a care provider. Tr. 548. At step five, the ALJ alternatively found plaintiff had the RFC to perform other work existing in significant numbers in the local and national economy as a mail sorter and as an office helper. Tr. 549.

## DISCUSSION

Plaintiff asserts the ALJ made four errors when he found plaintiff not disabled. First, plaintiff argues the ALJ erred by discrediting plaintiff's testimony. Second, plaintiff contends the ALJ erred when he evaluated the medical evidence presented by Dr. Tihanyi, Nurse Harlan, and Dr. Kruger. Third, plaintiff challenges the ALJ's decision on the ground that he failed to fully credit the observations of lay witnesses Chris Curtis and Cecil Reaves. Finally, plaintiff avers the ALJ erred because the ALJ's findings about work plaintiff could perform were not supported by substantial evidence.

*I.  Plaintiff's Credibility*

Plaintiff argues the ALJ erred when he did not find her fully credible because the ALJ's only reason for discrediting her testimony was her mental health symptoms have been stable with medication and therapy. Plaintiff contends this reason is not supported by substantial evidence and is not sufficiently specific because the ALJ did not identify which testimony was credible and which testimony was undermined.

The ALJ must consider a plaintiff's symptom testimony, including testimony regarding

workplace limitations. 20 C.F.R. § 416.929. The ALJ is responsible for evaluating the credibility of that testimony. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Unless affirmative evidence exists showing the plaintiff is malingering, the ALJ must present clear and convincing reasons for rejecting the plaintiff's testimony.[2] *Burch*, 400 F.3d at 680.

The ALJ presented clear and convincing reasons for rejecting plaintiff's testimony. First, the ALJ found plaintiff's activities of daily living ("ADLs") were inconsistent with the alleged severity of her limitations. Tr. 544. Plaintiff gardens, shops, cooks, cleans, does laundry, feeds her pets, and takes a yearly camping trip to Crater Lake. Tr. 544. Second, the ALJ found inconsistency between plaintiff's statements and her conduct. Tr. 544. Plaintiff stated she does not use drugs, but tested positive for marijuana and methamphetamine in 2008. Tr. 544-45. Third, the ALJ found plaintiff had improved with medication. Tr. 545. Plaintiff made improvements in focus, depression, task accomplishment by taking her medication. Tr. 545. Finally, the ALJ found plaintiff's work history was limited. Tr. 544. Plaintiff's longest job tenure was three years as a part-time cabinet maker and plaintiff stopped working in 2001, before the alleged disability onset date. Tr. 544. These are clear and convincing reasons to discredit plaintiff's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (discussing inconsistencies between alleged symptoms and ADLs,

---

[2] While affirmative evidence of malingering exists in the record and is discussed elsewhere in the ALJ's decision, Tr. 542, 546, the ALJ did not expressly discuss the evidence of malingering when he discredited plaintiff's testimony. *See* Tr. 544-45. Because this Court is "constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), this Court will review the ALJ's reasons for discrediting plaintiff's testimony under the clear and convincing standard.

inconsistencies in the plaintiff's testimony or between the plaintiff's testimony and conduct, effective medical treatment, and limited work history as clear and convincing reasons for an adverse credibility finding).

*II.    Medical Opinion Evidence*

Plaintiff further contends the ALJ erred because he did not properly evaluate the medical evidence provided by Dr. Tihanyi, Nurse Harlan, and Dr. Kruger. Dr. Tihanyi and Nurse Harlan were plaintiff's treating physician and nurse practitioner. Tr. 545-46, 1037. The treating relationship began in 2004. Tr. 546, 1037. Dr Tihanyi and Nurse Harlan wrote a joint statement ("Statement"), in which they opined plaintiff "is unable to function in a work situation" because "[s]he has impairment of cognitive functioning, limited short term memory, poor focus and concentration, and is very disorganized." Tr. 1011. The Statement was supported with Nurse Harlan's treating notes. *See* Tr. 1012-27. Dr. Tihanyi and Nurse Harlan also signed and completed an attorney-supplied questionnaire ("Questionnaire") in June 2012. Tr. 1037-40.

Plaintiff asserts the ALJ erred when he gave little weight to the opinions expressed by Dr. Tihanyi and Nurse Harlan in the Statement. Because Dr. Tihanyi is plaintiff's treating physician, her opinion is generally given deference. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id.* If the treating physician's opinion is uncontroverted, the ALJ must provide clear and convincing reasons for rejecting it. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). However, if the treating physician's opinion conflicts with another medical opinion, the ALJ may reject the treating physician's opinion in favor of a conflicting opinion "if the ALJ makes 'findings setting forth specific, legitimate reasons for doing

so that are based on substantial evidence in the record.'" *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Conflict between evidence of ADLs and the treating physician's opinion of the plaintiff's limitations is a specific and legitimate reason to reject a treating physician's opinion in favor of another medical opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fisher v. Astrue*, 429 F. App'x 649, 652 (9th Cir. 2011).

Because the Statement conflicts with other medical evidence,[3] the ALJ only needed to provide a specific and legitimate reason for giving Dr. Tihanyi's opinion little weight. The ALJ gave Dr. Tihanyi's opinion little weight because "the [plaintiff's] [ADLs] show that she is far more functional than described in these written opinions." Tr. 545. As previously noted, plaintiff shops, cooks, cleans, does laundry, feeds her pets, and gardens. Tr. 542, 544. As of April 2009, plaintiff also babysat her grandson twenty-four hours per week. Tr. 542, 544. The ALJ rationally concluded these ADLs show plaintiff is far more functional than described by Dr. Tihanyi. Therefore, the ALJ did not err by giving Dr. Tinhanyi's opinion in the Statement little weight because he provided a specific and legitimate reason supported by substantial evidence.[4]

---

[3] The Statement opines that plaintiff "is unable to function in a work situation" because "[s]he has impairment of cognitive functioning, limited short term memory, poor focus and concentration, and is very disorganized." Tr. 1011. In contrast, examining physician Dr. Kruger found plaintiff had a full-scale IQ of 85 (low average), could perform basic arithmetic, had intact memory, showed good attention on repetitive and routine tasks, and had fair abstraction ability. Tr. 546.

[4] To reject Nurse Harlan's opinion, the ALJ only needed to provide a germane reason. Nurse practitioners are considered "other sources" of medical evidence. 20 C.F.R. § 416.913(d). "The ALJ may discount testimony from [] 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). The ALJ's specific and legitimate reason for rejecting the Statement necessarily satisfies the less demanding germane reason standard. Therefore, the ALJ also did not err when he gave Nurse Harlan's opinion little weight.

Page 8 - OPINION AND ORDER

Plaintiff also argues the ALJ did not review the Questionnaire and, therefore, did not provide a legally sufficient reason to discredit its contents. To the contrary, the ALJ expressly discussed the Questionnaire in his decision. Tr. 546. The ALJ gave the Questionnaire little weight because Nurse Harlan's "treating notes do not support the limitations on lifting" and because plaintiff's ADLs and other examining physicians' opinions did not support the limitations indicated in the Questionnaire. Tr. 546. These reasons are specific, legitimate, and supported by substantial evidence in the record.[5] The ALJ did not err by giving the Questionnaire little weight.

Finally, plaintiff asserts the ALJ incorrectly gave Dr. Kruger's opinion significant weight. Dr. Kruger was an examining physician. Tr. 546, 860-67. Dr. Kruger administered several tests in his examination of plaintiff, including the Test of Memory Malingering and the Structured Inventory of Malingered Symptomatology. Tr. 546, 860, 865. The ALJ gave Dr. Kruger's opinion significant weight because it was "based on comprehensive testing and evaluation, and it [was] consistent with the [plaintiff's] reported [ADLs]." Tr. 546.

Plaintiff contends the ALJ erred when he gave Dr. Kruger's opinion significant weight because Dr. Kruger's opinion was internally inconsistent and ambiguous. Specifically, plaintiff argues the ALJ needed to resolve the conflict between Dr. Kruger's opinion plaintiff may have exaggerated her symptoms, his finding plaintiff answered truthfully in other instances, and his diagnosis of plaintiff based on her responses. However, there is no internal conflict in Dr. Kruger's testimony. The possibility of malingering does not mean plaintiff answered untruthfully in all other

---

[5]Because it is unclear from the record whether Dr. Tihanyi or Nurse Harlan completed the Questionnaire, it is questionable whether the ALJ needed to provide a specific and legitimate reason for giving the Questionnaire little weight, or only a germane reason. The distinction, however, is inconsequential here because the ALJ's reasons satisfy both standards.

Page 9 - OPINION AND ORDER

instances or that her responses were invalid for diagnosis. Dr. Kruger advised caution in reviewing plaintiff's statements; he did not disregard her responses entirely. The ALJ did not err by giving Dr. Kruger's opinion significant weight.

*III.    Lay Witness Testimony*

Plaintiff avers the ALJ erred because he did not properly evaluate the evidence from lay witnesses Chris Curtis and Cecil Reaves. Plaintiff contends the ALJ should have fully credited their testimony because the ALJ considered both witnesses' statements "credible to the extent they are based on personal observations" and did not otherwise indicate the weight accorded to their testimony. Tr. 547-48.

"Lay testimony as to a [plaintiff's] symptoms is competent evidence that an ALJ must take into account." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2011) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ gave germane reasons for discounting the testimony of Mr. Curtis and Mr. Reaves. The ALJ discounted Mr. Curtis' testimony because the ADLs Mr. Curtis described show plaintiff is not as limited as alleged. Tr. 547. The ALJ discounted Mr. Reaves' testimony for similar reasons. Tr. 548. Inconsistency with ADLs is a germane reason to discount lay witness testimony. *See March v. Comm'r of Soc. Sec. Admin.*, 462 F. App'x 671, 672 (9th Cir. 2011). Because he provided reasons germane to each witness, the ALJ did not err in discounting the lay witness testimony.

*IV.    Past Work and Other Work Existing in the Economy*

Finally, Plaintiff asserts the ALJ erred because the ALJ's conclusions regarding the work she

Page 10 - OPINION AND ORDER

could perform were inconsistent with her limitations. When determining the work the plaintiff could perform, the ALJ must determine the plaintiff's RFC, "a summary of what the [plaintiff] is capable of doing." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). Based on the RFC, the ALJ then evaluates the work the plaintiff could perform. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The ALJ routinely relies on the Dictionary of Occupational Titles ("DOT") in this evaluation. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT gives each job a General Educational Development score; one component of that score is Reasoning Development. *Dictionary of Occupational Titles* app. C § III (4th ed. 1991), 1991 WL 688702. The ALJ may also consider vocational expert ("VE") testimony when he evaluates what work the plaintiff could perform. *Zavalin*, 778 F.3d at 846.

Reasoning Development is divided into six levels. *Dictionary of Occupational Titles* app. C § III, 1991 WL 688702. Level One Reasoning requires the plaintiff to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." *Id.* Level Two Reasoning requires the plaintiff to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Id.* Level Three Reasoning requires the plaintiff to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." *Id.*

The ALJ found plaintiff had the RFC to perform:

> [A] full range of work at all exertional levels, but with the following nonexertional limitations: no climbing of ladders, ropes, and scaffolds; avoid even moderate exposure to noise and hazards (such as heights and dangerous equipment); *perform only simple, repetitive work*; and limited to occasional public and co-worker interaction.

Tr. 543 (emphasis added). The ALJ concluded plaintiff could perform past relevant work as a care provider (DOT 354.377-014) and other work existing in the national economy as a mail sorter (DOT

Page 11 - OPINION AND ORDER

209.687-026) and office helper (DOT 239.567-010). Tr. 548-49. The care provider and mail sorter jobs require Level Three Reasoning. *Dictionary of Occupational Titles* § 209.687-026, 1991 WL 671813 (mail clerk); *id.* § 354.377-014, 1991 WL 672933 (home attendant). The office helper job requires Level Two Reasoning. *Id.* § 239.567-010, 1991 WL 672232 (office helper). Plaintiff contends her limitations restrict her to Reasoning Level One work. Therefore, plaintiff argues the ALJ erred when he concluded plaintiff could perform past Reasoning Level Three work and other work existing in the local and national economy that requires Level Two or Level Three Reasoning.

*A.   Simple, Repetitive Work Limitation and Reasoning Level Two and Three Work*

The ALJ considered and relied on VE testimony in finding Reasoning Level Two and Three work compatible with plaintiff's simple, repetitive work limitation. *See* Tr. 549, 1098-1110. While the ALJ may consider VE testimony in evaluating the work the plaintiff could perform, "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT[,] . . . the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007)); *see also* SSR 00-4p, 2000 WL 1898704, *2 (Dec. 4, 2000). The ALJ may rely on VE testimony that contradicts the DOT, but only if the record contains persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir. 1995).

The ALJ erred when he found Reasoning Level Three work compatible with plaintiff's simple, repetitive work limitation. As the Ninth Circuit recently held, "there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin*, 778 F.3d at 847. In *Zavalin*, the court held that the ALJ erred by failing to reconcile this apparent conflict when the ALJ "failed to recognize [the] inconsistency" and "did not ask the [VE] to explain." *Id.* The same facts exist here: The ALJ did not recognize or ask the VE to explain the

Page 12 - OPINION AND ORDER

inconsistency between plaintiff's simple, repetitive work limitation and the Reasoning Level Three work recommended by the VE. *See* Tr. 1098-1110. Because the ALJ failed to reconcile this inconsistency, the ALJ erred when he relied on the VE's testimony to find plaintiff's RFC compatible with Reasoning Level Three work as a care provider and as a mail sorter.

In contrast, the ALJ did not err when he found Reasoning Level Two work compatible with plaintiff's simple, repetitive work limitation. As this Court previously held, "Reasoning Level 2 jobs are not inconsistent with simple, routine work." *Gilbert v. Colvin*, 2015 WL 1478441, *7 (D. Or. Mar. 31, 2015); *see also Chalmers v. Colvin*, 2014 WL 5488908, *9 (D. Or. Oct. 28, 2014). The Ninth Circuit alluded to the same finding in *Zavalin* and has expressly stated it in unpublished memoranda. *Zavalin*, 778 F.3d at 847; *Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008); *Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008). Because there is no apparent conflict between Reasoning Level Two work and plaintiff's simple, repetitive work limitation, the ALJ did not need to seek further explanation from the VE. Instead, the ALJ could and did rely on the VE's affirmation that his testimony was consistent with the DOT. Tr. 1100. Therefore, while the ALJ erred when he found Reasoning Level Three work compatible with the simple, repetitive work limitation in plaintiff's RFC, he did not err when he found Reasoning Level Two work compatible with that limitation. The ALJ's error eliminates the care provider and mail sorter jobs from the list of jobs plaintiff could perform; the only remaining job is the Reasoning Level Two officer helper job.

B. *One- to Two-Step Task Limitation and Reasoning Level Two Work*

Even though the ALJ did not err in finding Reasoning Level Two work compatible with the simple, repetitive work limitation, the ALJ erred when he concluded plaintiff could perform the Reasoning Level Two office helper job. The ALJ erred because his determination was based on an

incomplete RFC finding. In determining plaintiff's RFC, the ALJ relied in part on the opinion of Dr. Henry, a disability services psychological consultant. *See* Tr.547. Dr. Henry opined in his assessment that plaintiff was limited to performing simple one- to two-step tasks. Tr. 547, 566. While the ALJ gave Dr. Henry's opinion significant weight, the ALJ did not include the one- to two-step task limitation in plaintiff's RFC. Tr. 543, 547. Instead, the ALJ included the simple, repetitive work limitation. Tr. 543. The ALJ did not state in his decision why he included the simple, repetitive work limitation in plaintiff's RFC instead of the one- to two-step task limitation. *See* Tr. 547.

A plaintiff's RFC must include all limitations and restrictions. *Valentine*, 574 F.3d at 690. When reviewing opinion evidence for an RFC determination, the ALJ "must consider findings and other opinions of State agency medical and psychological consultants." 20 C.F.R. § 416.927(e)(2)(I). "Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." *Id.* § 416.927(e)(2)(ii). "RFC assessments by State agency medical or psychological consultants . . . are to be considered and addressed in the [ALJ's] decision as medical opinions from nonexamining sources." SSR 96-6p, 1996 WL 374180, *4 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

The ALJ implicitly rejected the one- to two-step limitation when he omitted it from plaintiff's RFC. The ALJ erred when he failed to explain why he rejected that portion of Dr. Henry's opinion.[6]

---

[6]The District Court for the Central District of California faced a substantially similar set of facts and likewise found the ALJ erred. *See Cardoza v. Astrue*, 2011 WL 1211469, *1 (C.D. Cal. Mar. 29, 2011) ("the Court concurs with plaintiff that the ALJ erred in his RFC determination because he failed to explain why he implicitly rejected the opinion of [] one of the

This error is not harmless. The difference between a simple, repetitive work limitation and a one- to two-step task limitation is significant: while there is no apparent conflict between a simple, repetitive work limitation and the demands of Level Two Reasoning, *Gilbert*, 2015 WL 1478441, at *7, there is an apparent conflict between Level Two Reasoning and a one- to two-step task limitation, *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015). If the ALJ fails to reconcile the apparent conflict between the demands of Level Two Reasoning and a one- to two-step task limitation, the court cannot determine whether the ALJ's step five findings are supported by substantial evidence. *Id.* at 1004.

Because the ALJ excluded the one- to two-step task limitation from plaintiff's RFC without explanation and neither recognized nor explained the conflict between the limitation and Level Two Reasoning, this Court cannot determine whether the office helper job is a viable option. Therefore, this Court remands the Commissioner's decision for further proceedings. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the [plaintiff] disabled if all the evidence were properly evaluated."). Before a disability determination can be made, the ALJ must resolve whether plaintiff's RFC should include a one- to two-step task limitation or a simple, repetitive work limitation. If plaintiff's RFC should include a one- to two-step limitation, the ALJ also must reconcile the apparent conflict between the limitation and the Reasoning Level Two officer helper job, or find Reasoning Level One work plaintiff can perform

---

State agency medical and psychological consultants").

Page 15 - OPINION AND ORDER

given the other nonexertional limitations in her RFC, to meet his step five burden of proof.

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

Dated this 24th day of February 2016.

                                                                                */s/ Ann Aiken*
                                                                                Ann Aiken
                                                                 United States District Judge